IN THE SUPREME COURT OF TENNESSEE

AT JACKSON

FILED

May 6, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

FOR PUBLICATION

Filed:  May 6, 1996

| | | |
|---|---|---|
| FANNIE TUGGLE and HOYT TUGGLE, | ) | |
| | ) | |
| | ) | |
| Plaintiffs-Appellees. | ) | |
| | ) | |
| | ) | SHELBY CIRCUIT |
| Vs. | ) | |
| | ) | |
| | ) | HON. KAY S. ROBILIO, |
| ALLRIGHT PARKING SYSTEMS, INC., | ) | JUDGE |
| | ) | |
| | ) | |
| Defendant-Appellant. | ) | No.  02-S-01-9501-CV-00009 |

**For Appellant:**

Carl Wyatt
Robert A. Cox
GLASSMAN, JETER, EDWARDS
 and WADE, P.C.
Memphis, Tennessee

**For Appellees:**

Lanier Fogg
Memphis, Tennessee

O P I N I O N

AFFIRMED.                                                                ANDERSON, C.J.

We granted this appeal to determine whether a party with a derivative claim - loss of consortium - is entitled to challenges under the peremptory jury challenge statute, Tenn. Code Ann. § 22-3-105.

We conclude that the clear and unambiguous language of the jury challenge statute provides additional peremptory challenges to a party with a derivative claim,[1] and that a new trial is required because the denial of that statutory right constitutes prejudice to the judicial process. In the interest of judicial economy, since a new trial is required, we have also decided that under comparative fault principles, the recovery of a spouse claiming loss of consortium will be reduced in proportion to or barred by the fault of the physically injured spouse. We, therefore, affirm the Court of Appeals' decision reversing and remanding for a new trial.

## BACKGROUND

The plaintiff, Fannie Tuggle, filed this personal injury action for damages after she fell on an icy walkway in a parking lot operated by the defendant, Allright Parking Systems, Inc. ("Allright"). Her husband, Hoyt Tuggle, joined in the suit alleging loss of consortium. The Tuggles allege that Allright was negligent in failing to clear the ice from the walkway.

At the first trial of this case, the plaintiffs won a jury verdict, but a new trial was granted. The second trial occurred after McIntyre v. Balentine, 833 S.W.2d 52 (Tenn. 1992), and was governed by its principles. The defendant pled that

---

[1]The statute authorizes a total of eight peremptory challenges per side when a civil suit involves more than one party per side. For example, if there are two party plaintiffs, then each is entitled to four peremptory challenges. However, if there are more than two party plaintiffs, the precise division of the eight peremptory challenges among the plaintiffs is a matter the statute assigns to the discretion of the trial court. Tenn. Code Ann. § 22-3-105.

-2-

both plaintiffs were barred from recovering because Fannie Tuggle's fault was greater than the fault of Allright.

At the second trial, during voir dire of the prospective jury, the two plaintiffs, having exercised four peremptory challenges, attempted to exercise a fifth peremptory challenge of a juror, claiming they were entitled to four each, and a total of eight, pursuant to Tenn. Code Ann. § 22-3-105(b)(1994 Repl.). The trial judge disallowed the fifth challenge, presumably concluding that because one of the plaintiffs was asserting a derivative claim for loss of consortium, the two plaintiffs were entitled to a total of only four peremptory challenges under the statute.

The jury was thereafter impaneled and sworn, and following the proof, returned a verdict for Allright. They determined that Allright was negligent, but concluded that Fannie Tuggle's negligence equaled or exceeded 50 percent of the total negligence. The juror the plaintiffs had attempted to challenge served as foreperson of the jury.

On appeal, the Court of Appeals concluded that the derivative character of a claim for loss of consortium does not alter the meaning of the statute which allows eight peremptory challenges in cases which involve more than one plaintiff. Accordingly, the Court of Appeals reversed and remanded for a new trial.

Thereafter, we granted permission to appeal to determine whether a party with a derivative claim is entitled to additional challenges under the jury challenge statute, and if so, whether the trial court's failure to allow the additional challenges resulted in prejudice requiring a remand for a new trial.

## PEREMPTORY CHALLENGES

In this Court, Allright argues that the trial court did not err in refusing to allow the plaintiffs to exercise eight peremptory challenges since the loss of consortium claim is derivative. Allright urges us to follow decisions from other courts which hold that additional challenges should be awarded only if the interests of the multiple party plaintiffs are antagonistic.

On the other hand, the Tuggles argue that under the plain language of the Tennessee statute they were each entitled to four peremptory challenges because this case involves more than one plaintiff.

We begin our analysis with some fundamental principles. In Tennessee, challenges to a prospective juror may be either peremptory or for cause. The right to challenge peremptorily is the right to exclude the prospective juror without assigning any reason for the challenge. Peremptory challenges are allowed by the Legislature as an act of grace and can be exercised as a matter of right only to the extent allowed by statute. Kunk v. Howell, 289 S.W.2d 874, 877 (Tenn. App. 1956).

The Legislature has determined that peremptory challenges will be allowed in civil cases by Tenn. Code Ann. § 22-3-105 (1994 Repl.), which provides:

> (a) Either party to a civil action may challenge four (4) jurors without assigning any cause.
>
> (b) In the event there is more than one (1) party plaintiff or more than one (1) party defendant in a civil action, four (4) additional challenges shall be allowed to such side or sides of the case; and the trial court shall in its discretion divide the aggregate number of challenges between the parties on the same side which shall not exceed eight (8) challenges to the side, regardless of the number

of parties. Even when two (2) or more cases are consolidated for trial purposes, the total challenges shall be eight (8), as herein provided.

(Emphasis added.)

In determining whether the statute grants eight peremptory challenges in this case, we apply well-settled principles of statutory construction, the most basic of which is to ascertain and give effect to the intention and purpose of the legislature. Worrall v. Kroger Co., 545 S.W.2d 736 (Tenn. 1977). Legislative intent and purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, without a forced or subtle construction that would limit or extend the meaning of the language. National Gas Distributors, Inc. v. State, 804 S.W.2d 66 (Tenn.1991). As early as 1841, this Court said that where the language contained within the four corners of a statute is plain, clear, and unambiguous and the enactment is within legislative competency, "the duty of the courts is simple and obvious, . . . obey it." Miller v. Childress, 21 Tenn. (2 Hum.) 320, 321-22 (1841). As to legislative intent, this Court has more recently observed that:

> [I]f [the legislative intent] is expressed in a manner devoid of contradiction and ambiguity, there is no room for interpretation or construction, and the judges are not at liberty, on consideration of policy or hardship, to depart from the words of the statute . . . .

Austin v. Memphis Pub. Co., 655 S.W.2d 146, 148 (Tenn. 1983).

Applying the foregoing principles of statutory construction, we observe that Tenn. Code Ann. § 22-3-105 (b) plainly provides that "[i]n the event there is more than one (1) party plaintiff . . . four (4) additional challenges shall be allowed . . . ." The statute is free of ambiguity, and in the face of such clear language, this Court's duty is to apply the statute as it is written, without further

interpretation or construction. In this case, there are two plaintiffs. Therefore, the answer is clear. Under the statute, each of the plaintiffs in this case was entitled to four peremptory challenges, and the trial court erred in refusing to grant the additional challenges.

Fatal to the defendant's argument is the absence of language in the Tennessee statute which conditions additional challenges on the antagonistic interests of the party plaintiffs. The Florida and Georgia decisions upon which the defendant relies involve statutes with different language than the statute at issue here and are, therefore, inapposite. Moreover, the derivative nature of a claim for loss of consortium is irrelevant to the construction of this statute. Our inquiry begins and ends with the plain language of the statute which dictates the number of challenges required when a case involves more than one plaintiff.

Therefore, we conclude that when there are two plaintiffs in one lawsuit, Tenn. Code Ann. § 22-3-105 (1994 Repl.) requires that each be afforded four peremptory challenges. Cf. Crawford v. Heaberg, 709 S.W.2d 611 (Tenn. App. 1986)(Holding that where three separate and independent lawsuits were consolidated for trial by jury, the plaintiffs were entitled to a total of eight peremptory challenges to be divided among them as the trial judge deemed appropriate).

Having determined that the trial court erred, we must next consider whether the error requires a remand for a new trial. We have previously stated, in the criminal context, that "[t]he Legislature, in its wisdom, certainly has the right and power to direct the judicial process." State v. Cook, 816 S.W.2d 322, 327 (Tenn. 1991). We also have emphasized that, "[r]ules prescribing jury selection procedures are intended to protect the integrity of the jury system by

providing a uniform and ordered method that ensures the accused a fair and impartial jury chosen from a fair cross-section of the community." State v. Coleman, 865 S.W.2d 455, 458 (Tenn. 1993). Although the stakes are different in civil cases, the power of the Legislature to direct the judicial process is unchanged, and the purpose of the procedural rules is the same -- to insure uniformity, impartiality, and fairness in jury selection. While it is difficult for an individual litigant to prove that a deviation from such procedural rules "more probably than not" affects the judgment in a particular case, it is clear that compliance with such rules protect the integrity of the jury system and safeguard the administration of justice. Id. Therefore, such deviations from prescribed procedural rules have been held to constitute prejudice to the judicial process under Tenn. R. App. P. 36(b). Cf. State v. Coleman, supra (Court commented that defendant had not been denied the use of his statutorily mandated number of peremptory challenges so no reversal required); State v. Cook, supra (Court found prejudice to the judicial process and reversed for a new trial where the defendant was denied his statutory right to have the jury instructed as to the range of possible punishments that would result from convictions).

In this case, Hoyt Tuggle was denied the use of his statutorily mandated number of peremptory challenges. In our view, denial of that right, which was designed to safeguard the administration of justice, constitutes prejudice to the judicial process and requires a reversal in this case under Tenn. R. App. P. 36(b). As a result, we affirm the Court of Appeals' decision that a new trial must be granted.

## COMPARATIVE FAULT - LOSS OF CONSORTIUM

Having determined that a new trial is required, in the interests of judicial economy, we deem it necessary to resolve a question of first impression - whether, under comparative fault principles, the recovery of a spouse claiming loss of consortium should be reduced or barred by the fault of the physically injured spouse.

We begin our analysis with a brief review of the law in this State as it relates to loss of consortium.  In Tennessee, "despite being a separate claim from that of an injured spouse for other damages, loss of consortium is also a derivative claim in that the physical injuries or incapacities of one's spouse give rise to and establish the claim."  Jackson v. Miller, 776 S.W.2d 115, 117 (Tenn. App. 1989); see also Swafford v. City of Chattanooga, 743 S.W.2d 174, 178 (Tenn. App. 1987).

In contrast to the Tennessee approach, a small number of jurisdictions view a claim for loss of consortium as an essentially different and independent cause of action from the physically injured spouse.  Based on that premise, those jurisdictions apply the rule that the recovery awarded the spouse claiming loss of consortium is not affected by the fault of the physically injured spouse.[2]

The clear majority of jurisdictions, however, hold that a loss of consortium award must be reduced, and may be barred, by the comparative fault of the physically injured spouse.[3]

_____

[2] See Schwennen v. Abell, 430 N.W.2d 98 (Iowa 1988); Feltch v. General Rental Co., 421 N.E.2d 67 (Mass. 1981); Brann v. Exeter Clinic, Inc., 498 A.2d 334 (N.H. 1985); Lantis v. Condon, 157 Cal. Rptr. 22 (Cal. App. 1979); Christie v. Maxwell, 696 P.2d 1256 (Wash. App. 1985).

[3] See Eggert v. Working, 599 P.2d 1389 (Alaska 1979); Nelson v. Busby, 437 S.W.2d 799 (Ark. 1969); Lee v. Colorado Dept. Of Health, 718 P.2d 221 (Colo. 1986); Mist v. Westin Hotels, Inc., 738 P.2d 85 (Hawai'i 1987); Runcorn v. Shearer Lumber Products, Inc., 690 P.2d 324 (Idaho 1984); Blagg v. Illinois F.W.D. Truck and Equipment Co., 572 N.E.2d 920 (Ill. 1991); McGuire v. Sifers, 681 P.2d 1025 (Kan. 1984) (statutory interpretation); Thill v. Modern Erecting Co., 170 N.W.2d 865 (Minn. 1969); White v. Lunder, 225 N.W.2d 442 (Wis. 1975); Weaver v. Mitchell, 715 P.2d 1361 (Wyo.

Courts following the majority rule regard a claim for loss of consortium as derivative for purposes of comparative fault, and explain their rationale as follows:

> [T]here must be a tort which gives rise to a cause of action that must be maintained by the [physically] injured spouse in order for the non-injured spouse to claim a loss of consortium. In other words, the loss of consortium claim is dependent upon the negligent injury of the other spouse who has the primary tort cause of action.

Mist v. Westin Hotels, Inc., 738 P.2d at 90. While acknowledging that "each spouse is equal and independent and suffers a personal loss when the other is injured," these courts emphasize that "does not alter the fact that the basis for recovery for loss of consortium is interference with the continuance of a healthy and happy marital life and injury to the conjugal relation." Eggert v. Working, 699 P.2d at 1391.

According to the majority of jurisdictions, reducing the recovery of a spouse claiming loss of consortium in proportion to the fault of the physically injured spouse is the simplest and easiest way to achieve a just result and insure that a loss resulting from an accident is distributed among those whose negligence caused it. Id.

Fostering family harmony is another rationale for the majority approach, which was articulated by the Colorado Supreme Court as follows:

> If a claim for loss of consortium were viewed as totally independent of the other spouse's personal injury claim, there would be no

---

1986); Quadrone v. Pasco Petroleum Co. Inc., 752 P.2d 504 (Ariz. App. 1988); Hamm v. City of Milton, 358 So.2d 121 (Fla. App. 1978); Kolkman v. Falstaff Brewing Corp., 511 N.E.2d 478 (Ind. App. 1987); Tichenor v. Santillo, 527 A.2d 78 (N.J. Super. 1987); Maidman v. Stagg, 441 N.Y.S.2d 711 (N.Y. A.D. 1981); Scattaregia v. Shin Shen Wu, 495 A.2d 552 (Pa. Super. 1985); Turnbow v. Wasden, 608 F.Supp. 237 (D.Nev. 1985) (interpreting Nevada law).

reason to preclude one spouse from suing another for loss of consortium or to prohibit the primary tortfeasor sued in a consortium claim from impleading the spouse who suffered the personal injuries. Placing one spouse in an adversarial relationship to the other over the latter's claim for loss of consortium introduces an element of legal conflict into the marriage that, far from contributing to marital harmony, will most likely have the effect of fostering discord between the parties. The derivative approach avoids much of this potential for conflict, since the recovery on a consortium claim is dependent solely on the determination of the relative degrees of negligence of the defendant and the spouse who sued for the personal injuries.

Lee v. Colorado Dept. of Health, 718 P.2d at 232.

Because we are persuaded that the majority rule is the better reasoned rule and is consistent with prior Tennessee decisions describing a claim for loss of consortium as derivative, and consistent with our purpose in adopting comparative fault which was to achieve fairness, McIntyre v. Balentine, 833 S.W.2d at 58, we conclude that the majority view, which holds that the fault of the physically injured spouse either reduces or bars recovery on the other spouse's loss of consortium claim, should be adopted as the law in this State.

Applying the majority rule upon retrial will result in a reduction of Hoyt Tuggle's recovery for loss of consortium if Fannie Tuggle is determined to be less than 50 percent at fault. However, both Hoyt and Fannie Tuggle will be unable to recover if Fannie Tuggle is determined by a jury to be 50 percent or more at fault.

## CONCLUSION

Having determined that the clear and unambiguous language of the jury challenge statute, Tenn. Code Ann. § 22-3-105(b) (1994 Repl.), provided for additional peremptory challenges to the plaintiff with a derivative claim in this case, and that the trial court error resulted in prejudice to the judicial process, we

affirm the Court of Appeals' judgment reversing and remanding for a new trial. Upon retrial, any recovery for Hoyt Tuggle's claim for loss of consortium shall be reduced in proportion to the fault of Fannie Tuggle if less than 50 percent, and barred completely if the jury determines that Fannie Tuggle's fault equaled or exceeded 50 percent. Costs of this appeal are taxed to the defendant, Allright Parking Systems, Inc., for which execution may issue if necessary.

_____
RILEY ANDERSON, CHIEF JUSTICE

**CONCUR:**

Drowota, Reid, Birch and White, JJ.