774 P.2d 213

Vivian VILLAREAL, mother and guardian, of Rachel Leah Garcia, Gregory Jesse Garcia, Pamela Jeanette Garcia, Anthony Conrad Garcia, minor children of Gregory J. Garcia; and Mellissa Ann Garcia, adult child of Gregory J. Garcia, an incapacitated person, Plaintiffs–Appellants,

v.

STATE of Arizona, DEPARTMENT OF TRANSPORTATION,
Defendants–Appellees.

Raul NEWMAN and Donna Newman, his wife, and Ronald Newman by and through his parents, Raul and Donna Newman, Petitioners/Plaintiffs,

v.

SUPERIOR COURT OF the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Stephen A. Gerst, a Judge thereof, Respondent Judge,

SUN VALLEY CRUSHING COMPANY, an Arizona corporation; William A. Walker and Doris C. Walker, husband and wife; John Weik, Jr. and Glendine Weik, his wife, Real Parties in Interest/Defendants.

Juan Antonio M. FUENTES, Carmen Dalhia M. Fuentes, and Guadalupe Angelica M. Fuentes, minors, by and through their Natural Parent, Carmen M. Fuentes, Petitioners,

v.

SUPERIOR COURT OF the State of Arizona, In and For the COUNTY OF MARICOPA; the Honorable E.G. Noyes, Jr., a judge thereof; and William Edward Odle and Jane Doe Odle, husband and wife; Odle & Son's Dairy, Real Parties in Interest; and Fairmont Railway Motors, a Division of Harsco Corporation, a Delaware corporation, Real Party in Interest, Respondents.

Nos. CV–87–0361–T, CV–88–0278–SA and CV–88–0419–SA.

Supreme Court of Arizona.

April 20, 1989.

**476**

Thomas E. Johnson, Tucson and Richard T. Platt, Coolidge, for plaintiffs/appellants, Villareal and Garcia.

Gallagher & Kennedy by Timothy R. Smock and Thomas A. Maraz, Phoenix, for defendant/appellee, State of Ariz., Dept. of Transp.

Larry G. Haddy, Ltd. by Larry G. Haddy, Phoenix, for petitioners/plaintiffs, Newman.

Jennings, Kepner & Haug by John R. Cunningham and Randy L. Sassaman, Phoenix, for real parties in interest/defendants, Sun Valley Crushing Co., Walker and Weik.

Beus, Gilbert, Wake & Morrill by Arthur N. Gorman, Phoenix, for petitioners, Fuentes.

Holloway & Thomas, P.C. by Benjamin C. Thomas and Therese M. Hansen, Phoenix, for respondent/real party in interest, Fairmont Ry. Motors, Inc., Harsco Corp.

## OPINION

GORDON, Chief Justice.

We have consolidated these three cases on the issue of whether minor children may maintain a cause of action for loss of consortium against a third party who injures one of their parents. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(1) and Ariz. R. Sp. Act. 4, 17B A.R.S.

## I. BACKGROUND

The background of each case as stated in the pleadings is set forth separately below.

*Villareal:* On May 6, 1981, an Arizona Department of Transportation ("State") crew was repairing State Highway 77, north of Winkelman, when Gregory J. Garcia crashed his motorcycle into the construction site. Garcia suffered serious personal injuries as a result of the crash and filed a suit against the State alleging negligence for its failure to safely warn motorists of the maintenance activities. The parties reached a court-approved settlement. Minnie Garcia, as guardian and conservator for Mr. Garcia, signed a release discharging the State from "any and all rights, claims, demands and damages of any kind...." The settlement agreement bound "Minnie Garcia as guardian and conservator for Gregory Garcia, their heirs, next of kin, executors, personal representatives or assigns...."

On December 19, 1985, Vivian Villareal, mother and guardian of Garcia's children, appellants in this case, all of whom were under the age of 18 when the accident occurred, brought suit against the State for their loss of parental consortium. The State sought summary judgment against the children on three grounds: (1) a cause of action for loss of parental consortium does not exist in Arizona; (2) the claim, if recognized, was barred by the applicable statute of limitations; and (3) the claim, if recognized, was extinguished by Garcia's settlement of his personal injury claim with the State. The trial court granted the State's motion for summary judgment on the ground that a child does not have a

cause of action for loss of parental consortium in Arizona.

Garcia's children filed an appeal with the Court of Appeals and requested that the matter be transferred to this Court. The State did not object and we granted the petition for transfer.

*Newman:* Defendant, Sun Valley Crushing Company ("Sun Valley") operates a sand and gravel business. Sun Valley allegedly created a sixty-foot cliff at the crest of a hill on a public trail. On October 19, 1985, Brent C. Vaughn, a minor, drove his bicycle off the cliff and died. On October 20, 1985, Raul Newman fell down the cliff while riding his ATC and suffered personal injuries. On July 16, 1987, Brent Vaughn's parents and Raul Newman sued Sun Valley. Seven months later, Newman moved to amend his complaint to add his daughter, Kimberly, as an additional plaintiff so that she could recover for her alleged emotional and psychological problems caused by her father's injuries. The trial court denied the motion to amend, reasoning that the proposed amendment failed to state a cause of action.

*Fuentes:* On December 14, 1985, John T. Fuentes suffered serious personal injuries at work when a railroad car built by Fairmont Railway Motors ("Fairmont") and owned and operated by his employer, Southern Pacific Transportation Company, collided with a Chevrolet Blazer owned and operated by Odle & Son's Dairy ("Odle"). Fuentes brought an action to recover for his personal injuries. On September 8, 1986, Fuentes, his wife, and his three minor children filed an amended complaint alleging that the injuries deprived the three children of "the love, society, care, companionship, guidance and support of their father," seeking to recover damages for loss of parental consortium. Fairmont moved for partial summary judgment and Odle moved for judgment on the pleadings. The trial court granted both motions and dismissed the children's claims.

## II. DISCUSSION

 Subject to the limitations set forth below, we hold that children may recover for loss of consortium when a third party causes serious, permanent, and disabling injury to their parent. Our holding is partially retroactive and applies to (1) the Newman and Fuentes children; (2) other children whose injured parents have a case presently pending or whose injured parents are presently eligible to bring their own claim; and (3) children whose parents are injured after the date of this decision. Additionally, a child's cause of action for loss of consortium is derivative and may be joined with the parent's suit against the third party.

### A. Reasons for Our Decision

#### 1. Consortium Law in Arizona and Other States

In 1954, this Court held that neither a wife nor a minor child had a separate cause of action for damages resulting from the negligent injury of the husband and father. *Jeune v. Del E. Webb Constr. Co.,* 77 Ariz. 226, 269 P.2d 723 (1954). In 1972, this Court stated, "When we find that the common law or 'judge-made law' is unjust or out of step with the times, we have no reluctance to change it." *City of Glendale v. Bradshaw,* 108 Ariz. 582, 584, 503 P.2d 803, 805 (1972). Accordingly, this Court overruled the portion of *Jeune* that denied a wife's right to recover for loss of her husband's consortium.

Our court of appeals recognized a cause of action for parents' loss of an injured minor child's consortium. *Reben v. Ely,* 146 Ariz. 309, 705 P.2d 1360 (Ct.App.1985). In 1986, we extended *Reben* to allow parents to recover for loss of an adult child's consortium. *Frank v. Superior Court,* 150 Ariz. 228, 722 P.2d 955 (1986). Today, we take a final step in overruling *Jeune* and recognize a child's right to recover for loss of parental consortium. *See* Comment, *Frank v. Superior Court: Purging the Law of Outdated Theories for Loss of Consortium Recovery,* 29 Ariz. L. Rev. 541, 547–48 (1987) (discussing *Frank* and noting that "the next logical step in this progression is protecting the child's interest in the parent-child relationship").

A majority of the courts considering a child's claim for loss of parental consortium rejects such a cause of action.[1] A substantial minority, however, recognizes the claim.[2] We reviewed the arguments on both sides and find the arguments favoring the cause of action more persuasive.

### 2. Importance of Children's Rights and Inconsistency of Present State of the Law

One of our reasons[3] for recognizing this cause of action is society's increased recognition and awareness of children as persons with rights.[4] For example, the United States Supreme Court recognizes children's due process and equal protection rights under the United States Constitution. *E.g.*, *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (recognizing due process right to notice and informal hearing in school disciplinary process); *Gomez v. Perez*, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973) (recognizing equal protection right of illegitimate children to maintain civil action for non-support against parent). In Arizona, the legislature enacted a number of provisions designed to protect children's interests including foster care review boards (A.R.S. §§ 8–515.01 through –515.-04), automatic wage assignments, (A.R.S.

§§ 25–323 through –323.03 followed by child support guidelines (Supreme Court of Arizona Administrative Order No. 87–36)), registration requirements for child care personnel (A.R.S. § 41–1964), and special sentencing provisions for dangerous crimes against children (A.R.S. § 13–604.01).

We believe that children have a right to enjoy a mutually beneficial relationship with their parents. When discussing this relationship previously, we stated, "While all family members enjoy a mutual interest in consortium, the parent-child relationship is undeniably unique and the wellspring from which other family relationships derive. It is the parent-child relationship which most deserves protection and which, in fact, has received judicial protection in the past." *Frank v. Superior Court*, 150 Ariz. at 229 n. 3, 722 P.2d at 956 n. 3.

The loss of a parent's love, care, companionship, and guidance can severely impact a child's development and have a major influence on a child's welfare and personality throughout life. Because every individual's character and disposition impact on society, it is of highest importance to the child and society that we protect the right to receive the benefits derived from the parental relationship. Note, *The Child's Right To Sue For Loss Of A Parent's*

1. Decisions rejecting the cause of action include: *DeLoach v. Companhia de Navegacao Lloyd Brasileiro*, 782 F.2d 438 (3rd Cir.1986) (applying maritime law); *Green v. A.B. Hagglund and Soner*, 634 F.Supp. 790, 796 (D.Idaho 1986) (applying Idaho law); *Lee v. Colorado Dept. of Health*, 718 P.2d 221 (Colo.1986); *Durepo v. Fishman*, 533 A.2d 264 (Me.1987); *Ipock v. Gilmore*, 85 N.C.App. 70, 73–75, 354 S.E.2d 315, 317, *cert. denied*, 320 N.C. 169, 358 S.E.2d 52 (1987); *Steiner ex rel. Steiner v. Bell Telephone Co.*, 358 Pa.Super. 505, 517 A.2d 1348 (1986), *aff'd*, 518 Pa. 57, 540 A.2d 266 (1988). A collection of other decisions rejecting the cause of action is contained in Annotation, *Child's Right of Action for Loss of Support, Training, Parental Attention, or the Like, Against a Third Person Negligently Injuring Parent*, 11 A.L.R. 4th 550 (1982).

2. Decisions adopting the cause of action include: *Leach v. Newport Yellow Cab, Inc.*, 628 F.Supp. 293 (S.D. Ohio 1985); *Hibpshman v. Prudhoe Bay Supply, Inc.*, 734 P.2d 991 (Alaska 1987); *Dearborn Fabricating and Engineering Corp. v. Wickham*, 532 N.E.2d 16 (Ind.Ct.App. 1988); *Ferriter v. Daniel O'Connell's Sons, Inc.*,

381 Mass. 507, 413 N.E.2d 690 (1980); *Berger v. Weber*, 411 Mich. 1, 303 N.W.2d 424 (1981); *Hay v. Medical Center Hospital of Vermont*, 145 Vt. 533, 496 A.2d 939 (1985); *Ueland v. Reynolds Metals Co.* (State Report Title: *Ueland v. Pengo Hydra–Pull Corp.*), 103 Wash.2d 131, 691 P.2d 190 (1984); *Theama by Bichler v. Kenosha*, 117 Wis.2d 508, 344 N.W.2d 513 (1984);

3. The Fuentes argue that it violates equal protection and due process to allow parents to sue for loss of a child's consortium, but to deny children the right to sue for loss of a parent's consortium. Because we base our decision to adopt this cause of action on other grounds, we do not address the merits of this argument.

4. "The importance of the child to our society merits more than lip service. Convinced that we have too long treated the child as [a] second-class citizen or some sort of non-person, we feel constrained to remove the disability we have imposed." *Berger v. Weber*, 411 Mich. 1, 17, 303 N.W.2d 424, 427 (1981) (adopting cause of action for loss of parent's consortium).

*Love, Care And Companionship Caused By Tortious Injury To The Parent*, 56 B.U.L. Rev. 722, 740–41 (1976). Our legislature recognizes the value of the parent-child relationship and allows children to recover for the wrongful death of a parent. A.R.S. § 12–612. As we noted in *Frank*, often death is separated from severe injury by mere fortuity. 150 Ariz. at 330, 722 P.2d at 957. Both may cause a deleterious impact on the quality of consortium. It would be inconsistent to allow recovery for loss of consortium resulting from death but to deny recovery when the loss results from severe injury. *Ueland v. Reynolds Metals Co.*, 103 Wash.2d 131, 134, 691 P.2d 190, 192 (1984) (when a parent dies or when a parent is severely injured and remains alive in a vegetative state the child's loss of the parent's love, care, companionship, and guidance is nearly the same in both situations).

### 3. Arguments Against Recognizing the Claim

As defendant Sun Valley points out, the *Restatement (Second) of Torts* § 707A (1977) does not recognize a child's consortium claim:

> One who by reason of his tortious conduct is liable to a parent for illness or other bodily harm is not liable to a minor child for resulting loss of parental support and care.

Generally, Arizona courts consider the Restatement authoritative absent contrary Arizona precedent. *Bank of America v. J. & S. Auto Repairs*, 143 Ariz. 416, 418, 694 P.2d 246, 248 (1985). Although we are formally adopting a new cause of action, we believe that our decision is a logical extension of existing case law. When we recognized the value of the parent-child relationship in *Frank*, we cited several opinions that upheld the child's cause of action. 150 Ariz. at 230, 722 P.2d at 957. *Ueland*, 103 Wash.2d 131, 691 P.2d 190 (1984) (child may recover for loss of parental consortium); *Theama by Bichler v. City of Kenosha*, 117 Wis.2d 508, 344 N.W. 2d 513 (1984) (same); *Berger v. Weber*, 82 Mich.App.199, 267 N.W.2d 124 (1978), *modified and aff'd*, 411 Mich. 1, 303 N.W.2d

424 (1981) (same). Because we base our decision on existing case law, we decline to follow the Restatement.

Sun Valley and Fairmont raise several policy arguments against recognizing this cause of action. One argument is that the claim creates a risk of double recovery. Proper jury instructions and special verdicts, however, can eliminate this risk. *Hay v. Medical Center Hospital of Vermont*, 145 Vt. 533, 541–42, 496 A.2d 939, 944; Ariz.R.Civ.P. 49(g). Another argument, stressed by the State, is that recognition of this claim expands liability beyond foreseeability and places an undue burden on tortfeasors. We believe that the foreseeability of harm to a victim's child is as equally foreseeable as harm to a victim's spouse. Because we have already recognized a cause of action for the victim's spouse, we reject this argument as well. *Bradshaw*, 108 Ariz. at 584, 503 P.2d at 805. As to the undue burden on the tortfeasor, we previously rejected a similar claim, noting that this "hue and cry" is raised in many tort cases. *University of Arizona Health Sciences Center v. Superior Court*, 136 Ariz. 579, 583, 667 P.2d 1294, 1298 (1983).

Fairmont argues that in cases where there are limited funds available to compensate multiple plaintiffs from one family, recognizing this claim will create conflicts of interest and intrafamilial disputes because all family members will seek to maximize their own recovery. The threat to family harmony in consortium cases is no different than the threat in other cases involving family litigation, such as wrongful death cases or cases in which multiple family members are physically injured by a single defendant. *See Hibpshman v. Prudhoe Bay Supply, Inc.*, 734 P.2d 991, 995 (Alaska 1987) (rejecting similar argument); *Hay*, 145 Vt. at 540, 496 A.2d at 943 (same). We previously rejected potential intrafamilial conflicts as a ground for denying relief to an injured party. *Fernandez v. Romo*, 132 Ariz. 447, 450, 646 P.2d 878, 881 (1982) (abrogating doctrine of interspousal tort immunity in automobile accident case); *Streenz v. Streenz*, 106 Ariz.

86, 88, 471 P.2d 282, 284 (1970) (rejecting parental immunity in automobile accident case).

Sun Valley's final argument is that this court should exercise judicial restraint and defer to the legislature. Our court of appeals appropriately rejected such an argument in *Reben*, 146 Ariz. at 310–11, 705 P.2d at 1361–62 (expansion of tort law claims is peculiarly within the realm of our judicial, rather than legislative branch).

### B. Limitations

#### 1. Degree of Harm to Parent–Child Relationship

■ Sun Valley argues that recognizing this action will cause unlimited claim multiplication and great difficulty for trial courts in determining who is a proper plaintiff. A proper plaintiff is a child whose parent has been injured. We limit our definition of parent to include biological and adoptive parents. Injuries to siblings, grandparents, other relatives, or friends do not qualify as an injury to a parent for purposes of this claim.

■ Not all injuries to parents will result in a child's claim for loss of consortium. We limit our holding to allow loss of consortium claims only when the parent suffers serious, permanent, disabling injury rendering the parent unable to provide love, care, companionship, and guidance to the child. The parent's mental or physical impairment must be so overwhelming and severe that the parent-child relationship is destroyed or nearly destroyed.[5] *See Hay*, 145 Vt. at 537, 496 A.2d at 941 (parent rendered permanently comatose); *Theama*, 117 Wis. 2d at 514, 344 N.W.2d at 515 (father's permanent mental and physical injuries essentially deprived minor children of any further parent-child exchange).

#### 2. Retroactive versus Prospective Application

■ Whether a judicial holding will be given only prospective application is a question of policy. *Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 505, 733 P.2d 1073, 1088, *cert. denied*, — U.S. —, 108 S.Ct. 212, 98 L.Ed.2d 177 (1987). In determining whether to apply a decision retroactively, we balance the three factors set forth in *Law v. Superior Court*, 157 Ariz. 147, 160, 755 P.2d 1135, 1148 (1988) (supplemental opinion): (1) whether the opinion establishes a new legal principle by overruling clear and reliable precedent or by deciding an issue whose resolution was not foreshadowed; (2) whether retroactive application would adversely affect the purpose behind the new rule; and (3) whether retroactive application would produce substantially inequitable results.

Regarding the first factor, our decisions in *City of Glendale v. Bradshaw*, *Reben*, and *Frank*, called *Jeune* into question and foreshadowed our resolution of this issue. We believe our decision today is an extension of existing case law. Thus, the first factor weighs in favor of retroactive application.

The purpose of our new rule is to protect children's right to parental consortium. Retroactive application would protect the interests of children whose parents were injured in the past. Thus, the second factor weighs in favor of retroactive application.

Regarding the third factor, if we were to allow every child whose parents had been injured in the past to bring consortium claims at this time, substantially inequitable results would follow. Numerous defendants would be subject to claims in cases they previously believed had been finalized. This factor weighs against retroactive application.

We have the discretion to decide the most equitable time to make new rules applicable. *State ex rel. Collins v. Superior Court*, 132 Ariz. 180, 190, 644 P.2d 1266, 1276 (1982). Therefore, in consideration of the three factors discussed above, we hold that this decision is partially retroactive. Only the following persons may bring a loss of parental consortium claim: (1) the

---

5. Fairmont argues that John Fuentes' injuries are not severe enough to warrant his children's loss of consortium claim. We believe this is a question of fact for the jury, subject to the usual rules under which a judge may enter summary judgment or a directed verdict.

Newman and Fuentes children; (2) other children whose injured parents have a case presently pending or whose injured parents are presently eligible to bring their own claim; and (3) children whose parents are injured after the date of this decision. Because Mr. Garcia's case has been settled, the Villareal (Garcia) children are not eligible to pursue their loss of consortium claims.

### 3. Procedural Considerations/Nature of the Claim

■ A defendant in a consortium case is liable to the child because the defendant injured the child's parent and thereby damaged the parent-child relationship. Both the child's claim and the parent's claim are based on the same conduct of the defendant. A child's claim for loss of consortium is derivative of the parent's claim for personal injuries. Defenses good against the parent will be good against the child, and any percentage of negligence attributable against the parent under Arizona's comparative negligence statute will reduce the amount of the child's recovery. *See Quadrone v. Pasco Petroleum Co., Inc.*, 156 Ariz. 415, 752 P.2d 504 (Ct.App.1987) (wife's award for loss of husband's consortium reduced by percentage of fault attributable to husband).

■ Ordinarily, children's minority tolls the statute of limitations. A.R.S. § 12–502. Minor children suffering injury may wait to bring an action until after they become eighteen years old, and the applicable statute of limitations runs from their eighteenth birthday. Because a child's loss of consortium claim is derivative of the parent's personal injury claim, we hold that defendants may require joinder of the claims by appropriate motion to the trial court. This will avoid duplicate litigation and will allow settlement or finalization of all claims resulting from the defendant's conduct at the same time. If the defendant does not request joinder, or if joinder is not

feasible, the normal statute of limitations rules will apply. *Cf. Hibpshman v. Prudhoe Bay Supply, Inc.*, 734 P.2d at 997 (requiring joinder); *Dearborn Fabricating and Engineering Corp. v. Wickham*, 532 N.E.2d 16 (Ind.Ct.App.1988) (joinder required unless not feasible); *Ueland v. Reynolds Metals Co.*, 103 Wash.2d at 137, 691 P.2d at 194 (joinder required). To ensure protection of children's rights, the trial judge may, at the request of either party, or upon his or her own motion, appoint a guardian ad litem, conservator, or other appropriate fiduciary.

■ Finally, we emphasize that a child's claim for loss of parental consortium is different from a claim for negligent infliction of emotional distress. Negligent infliction of emotional distress requires that the plaintiff witness an injury to a closely related person, suffer mental anguish that manifests itself as a physical injury, and be within the zone of danger so as to be subject to an unreasonable risk of bodily harm created by the defendant. *Gilbreath v. St. Paul Fire & Marine Ins. Co.*, 141 Ariz. 92, 96, 685 P.2d 729, 733 (1984); *Keck v. Jackson*, 122 Ariz. 114, 115–16, 593 P.2d 668, 669–70 (1979). In contrast, a child's consortium claim does not require that the child/plaintiff be within the zone of danger.

■ To bring a consortium claim, the child/plaintiff must show that the defendant injured the child's parent in a manner that would subject the defendant to liability under ordinary tort principles. The injury to the parent must cause severe damage to the parent-child relationship. The child may recover for the loss of the parent's love, affection, protection, support, services, companionship, care, and society. In determining the amount of damages to award the child, relevant factors include, but are not limited to, the child's age, the nature of the child's relationship with the parent,[6] the child's emotional and physical characteristics, and whether other consor-

---

**6.** The quality of the parent-child relationship will vary from family to family. As we stated in *Frank,* "Some filial relationships will be blessed with mutual caring and love from infancy

through death where others will always be bereft of those qualities." 150 Ariz. at 233, 722 P.2d at 960.

tium-giving relationships are available for the child.

## III. DISPOSITION

■ *Villareal:* The respondent judge's order granting the State's motion for summary judgment is vacated. The Garcia children's claims are remanded for disposition in accordance with this opinion.

■ *Newman:* The order of respondent judge is vacated. The Newmans are permitted to amend their complaint in accordance with this opinion.

■ *Fuentes:* The respondent judge is directed to enter an order denying Fairmont's motion for summary judgment and denying Odle's motion for judgment on the pleadings. The Fuentes children's claims for loss of parental consortium are reinstated in accordance with this opinion.

FELDMAN, V.C.J., and CAMERON and MOELLER, JJ., concur.

Justice William A. Holohan retired before the decision of this case; Justice Robert J. Corcoran did not participate in the determination of this case.